SUPAK & SONS MANUFACTURING
COMPANY, INC., Appellee,

v.

PERVEL INDUSTRIES, INC., Appellant.

No. 78–1329.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 7, 1979.

Decided March 5, 1979.

George E. Goldberg, New York City (Kreindler, Relkin & Goldberg, New York City, on brief), for appellant.

L. P. Hornthal, Jr., Elizabeth City, N. C. (LeRoy, Wells, Shaw, Hornthal, Riley & Shearin, P. A., Elizabeth City, N. C., on brief), for appellee.

Before WINTER, BUTZNER and HALL, Circuit Judges.

WINTER, Circuit Judge:

In this diversity contract action by Supak & Sons Manufacturing Company (Supak) against Pervel Industries, Inc. (Pervel), Pervel appeals from the district court's refusal to stay proceedings pending arbitra-

tion of the underlying dispute. We think the district court correct in its conclusion that the parties did not agree under applicable law to submit their dispute to arbitration, and we therefore affirm.

### I.

The underlying dispute concerns a number of oral contracts reached over the telephone for the sale of specified quantities of fabric by Pervel, located in New York, to Supak, located in North Carolina. In each instance, Pervel confirmed the oral contract by mailing a standard confirmation form. Although the question of arbitration was never discussed by the parties over the telephone, Pervel's confirmation form contained a provision that any controversy arising out of the contract be submitted to binding arbitration. Supak did not object to these confirmation forms.

■ Supak alleged that after it had cut the Pervel fabric and used it as trim on coats manufactured by Supak, the fabric bled into the base fabric of the coats, thereby ruining them. It brought this action for breach of warranty. Pervel contended that the sales contracts required Supak to submit the dispute to arbitration, and it moved under 9 U.S.C. § 3 for a stay of proceedings pending arbitration. The district court, after considering affidavits filed by both parties, denied the motion, and Pervel appeals.[1]

### II.

■ Supak, of course, is not required to submit its grievance to arbitration unless the arbitration clause included in Pervel's confirmation form became, under applicable contract law, part of the sales contract. Although the contract negotiations took place in both New York and North Carolina, there is no need to determine which state's law governs, since both states have enacted § 2–207 of the Uniform Commercial Code. That section provides that when a written confirmation form contains terms in addition to those reached in the oral sales contract between merchants and the party receiving the form does not make timely objection, then the additional terms become part of the contract unless they "materially alter" it.[2] Moreover, the courts of last resort of both states have held that the addition of an arbitration clause constitutes a *per se* material alteration of the contract. *Frances Hosiery Mills, Inc. v. Burlington Industries, Inc.*, 285 N.C. 344, 204 S.E.2d 834 (1974); *Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239 (1978). Thus, under the law of either state, the arbitration clause did not become part of the contract.

Pervel, however, contends that state law in this area is superseded by a federal substantive law of contracts favoring arbitration provisions. This federal substantive law is said to be embodied in 9 U.S.C. § 2, which provides for the validity and enforce-

---

1. We have jurisdiction of this appeal. The underlying contract action is clearly an action at law, not a suit in equity. It is well established that in an action at law, an order denying a motion to stay proceedings under 9 U.S.C. § 3 is akin to a denial of an interlocutory injunction and is therefore appealable under 28 U.S.C. § 1292(a)(1). *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 293 U.S. 449, 451–52, 55 S.Ct. 313, 79 L.Ed. 583 (1935); *Garner Lumber Co. v. Randolph E. Valensi, Lange, Inc.*, 513 F.2d 1171 (4 Cir. 1975); 9 Moore's Federal Practice ¶ 110.20[4.–1] (2d ed. 1975).

2. N.C.Gen.Stat. § 25–2–207 and N.Y.U.C.C. § 2–207 both provide in relevant part:

   (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

   (2) The additional or different terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract *unless*:

   (a) the offer expressly limits acceptance to the terms of the offer;

   (b) *they materially alter it*; or

   (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

   .  .  .  (Emphasis added.)

ability of arbitration clauses in contracts evidencing transactions in interstate commerce.[3] Pervel reasons that the decisional law of New York and North Carolina holding an arbitration clause to be a *per se* material alteration under U.C.C. § 2–207 is contrary to the federal policy favoring commercial arbitration and therefore should not be followed.

■ We believe that Pervel misperceives the scope of 9 U.S.C. § 2. That section provides for the validity and enforceability of a written arbitration clause "in any . . . contract." By its terms, § 2 does not apply until the arbitration clause in question is determined to be part of the contract. Section 2 dictates the effect of a contractually agreed-upon arbitration provision, but it does not displace state law on the general principles governing formation of the contract itself. *See Duplan Corp. (Duplan Yarn Division) v. W. B. Davis Hosiery Mills, Inc.*, 442 F.Supp. 86 (S.D.N.Y.1977). As the Supreme Court has stated in another context, the purpose of § 2 is "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270.

■ We see no conflict between § 2 and U.C.C. § 2–207, as judicially construed in New York and North Carolina. While we agree with the holding of *Collins Radio Co. v. Ex-Cell-O Corp.*, 467 F.2d 995 (8 Cir. 1972), that § 2 is preemptive of conflicting state laws which restrict the validity or enforceability of arbitration agreements,[4] § 2–207 is not such a law, but is rather a general rule of contract formation. Per-

haps, although we do not decide the point, § 2 would preempt a state rule of contract formation which applied only to arbitration clauses and which placed an unreasonable burden on the parties' ability to commit themselves to arbitration.[5]

The U.C.C. rule in the instant case does not apply only to arbitration clauses. Many sorts of clauses, including those disclaiming an otherwise applicable warranty of merchantability or fitness and those requiring a complaint to be made within an uncustomarily short time, are also considered material alterations under § 2–207. *See* U.C.C. § 2–207, Comment 4. Nor does the state rule unduly burden the parties' ability to agree to an arbitration clause; it merely applies to arbitration clauses the traditional common law rule that a term does not become part of the contract unless accepted by both parties.

We conclude that under § 2–207, the governing law, the arbitration clause was not part of the sales contract and we perceive no merit in Pervel's other theories as to how, under other sections of U.C.C., the agreement to arbitrate became a part of the contract. We therefore conclude that the district court properly refused to stay proceedings pending arbitration.

AFFIRMED.

---

3. 9 U.S.C. § 2 provides in relevant part:

A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

4. In *Collins Radio*, the court refused to apply a Texas statute providing that an arbitration clause, in order to be "valid, enforceable and irrevocable," must be signed by the parties' attorneys, not simply by the parties themselves.

5. This could have been the rationale for the *Collins Radio* decision if the Texas statute is viewed as a rule of contract formation rather than a law governing the effect of a provision in the contract.